IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOANNE WATTS and GORDON L. EMICK, JR., | No. 4:20-CV-01311 |
| Plaintiffs, | (Judge Brann) |
| v. | |
| PEKIN INSURANCE, | |
| Defendant. | |

## MEMORANDUM OPINION

### MARCH 19, 2021

## I.    BACKGROUND

The two Plaintiffs in this case drove a car insured by the Defendant.  After Plaintiffs were in a car accident, they asked the insurance company to reimburse them for costs.  The insurance company refused, and Plaintiffs have sued.  Defendant moved to dismiss, arguing that a choice-of-law provision in the insurance contract had to be enforced and Indiana law therefore had to be applied.  The motion is now ripe for disposition.  The insurance company is incorrect that Indiana law must necessarily be applied.  And because the insurance company failed to provide any other ground to dismiss this action, the motion is denied and the matter will proceed.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a pleading"[1] and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Following the Roberts Court's "civil procedure revival,"[5] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7] tightened the standard that district courts must apply to 12(b)(6) motions.[8]   These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[9]

---

[1]    *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).

[2]    *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[3]    *Id.* at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[4]    *Id.* at 327.

[5]    Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316, 319-20 (2012).

[6]    550 U.S. 544 (2007).

[7]    556 U.S. 662, 678 (2009).

[8]    *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[9]    *Id.*

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[12] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[13]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[15]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts

---

[10]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[11]  *Id.*

[12]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[13]  *Twombly*, 550 U.S. at 556.

[14]  *Iqbal*, 556 U.S. at 679.

[15]  *Id.* at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

alleged in the light most favorable to [the plaintiff]."[16] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[17] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[19]

## B. Facts Alleged in the Complaint

The facts alleged in the complaint, which I must accept as true for the purposes of this motion, are as follows.

Watts owned a 2015 Honda Civic and lived in Indiana until August or September 2017, when she moved to South Williamsport, Pennsylvania.[20]   On September 20, 2017, Watts, her daughter, and Emick were injured in a car crash

---

[16]   *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[17]   *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[18]   *Id.* at 678.

[19]   *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

[20]   Doc. 1 ¶¶ 9-11.

while she was driving the Civic.[21]  They were rear-ended by a man who was

intoxicated.[22]  Watts and Emick were treated for various injuries at the UPMC

Williamsport Emergency Department and for years have dealt with subsequent

medical ailments stemming from the accident.[23]

In June 2019, Watts and Emick filed separate civil lawsuits against the

intoxicated driver.[24]  Emick settled his lawsuit, and Watts's is still pending.[25]

Watts's Civic was insured by Pekin Insurance during the relevant period.[26]  After a

series of communications between Watts's and Emick's lawyer and Pekin, Pekin

refused underinsured motorist coverage because the policy limits of the intoxicated

driver's policy equaled the underinsured motorist coverage limits under Watts's

policy.[27]

## C.    Analysis

Plaintiffs Watts and Emick raise a number of claims against Defendant

Pekin Insurance, for declaratory judgment, breach of contract, and bad faith.

Pekin's argument is very narrow and limited; Pekin believes the Court must apply

Indiana law instead of Pennsylvania law, which requires dismissal of the breach of

contract claim.  Dismissing that claim, in turn, leads to the dismissal of the

---

[21]  *Id*. ¶¶ 13-15.
[22]  *Id*. ¶¶ 16-17.
[23]  *Id*. ¶¶ 18-35.
[24]  *Id*. ¶ 36.
[25]  *Id*. ¶¶ 39-40.
[26]  *Id*. ¶ 41.
[27]  *Id*. ¶¶ 50-58.

declaratory judgment and bad faith claims.[28]  In other words, Pekin's only argument for dismissal of the action relies on the assumption that Indiana law applies.  Pekin has not disputed Plaintiffs' interpretation of Pennsylvania law, nor does Pekin assert that dismissal would be appropriate under Pennsylvania law. Therefore, I begin with an analysis of which state's law should apply to the breach of contract claim.

I must use Pennsylvania's choice of law principles to determine which law governs, as this is the forum state.[29]  In making this decision, "the first question to be answered ... is whether the parties explicitly or implicitly have chosen a relevant law."[30]  The parties agree that Indiana law was, at least, implicitly chosen by the parties.[31]  But then the parties diverge: Pekin claims that this concession ends the analysis, and that the Court is required to apply Indiana law.  Watts and Emick argue that even when parties have included a choice-of-law provision, the Court may overrule that preference in certain circumstances.

### 1.    Whether the Court May Perform a Choice-of-Law Analysis

Pekin suggests that *Assicurazioni Generali, S.P.A. v. Clover*, a decision of the Third Circuit from 1999, requires this Court to dismiss the complaint without conducting a choice-of-law analysis.[32]  In *Clover*, the Third Circuit reversed a

---

[28]   *See* Doc. 7.
[29]   *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941).
[30]   *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999).
[31]   *See* Doc. 7 at 8-9; Doc. 8 at 11.
[32]   195 F.3d 161 (3d Cir. 1999).

District Court that had "simply assumed without an articulated analysis that the parties had not indicated any intention regarding the law that would apply in interpreting the policy."[33]  That District Court applied Pennsylvania law when it should have considered whether the parties had contracted with a specific choice-of-law provision.  The Third Circuit found that they had; the parties intended for Indiana's underinsured motorist coverage law to govern.  The Circuit remanded the case for the District Court to apply Indiana law.

Plaintiffs acknowledge *Clover*, but point to black-letter Pennsylvania law noting that a Court should apply the law agreed upon in a contract *unless*:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 [of the Restatement (Second) of Conflicts of Law], would be the state of the applicable law in the absence of an effective choice of law by the parties.[34]

Plaintiffs suggest that despite the implicit agreement to use Indiana law, this Court should evaluate whether the choice-of-law provision should be upheld.  Pekin claims that these standard choice-of-law principles offer no reason to deviate from the holding in *Clover*.  But Pekin invokes *Clover* as though it were "directly on-

---

[33] *Id*. at 164.
[34] *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 621-22 (3d Cir. 2009) (citations omitted).

point."[35]  It is not.  Instead, *Clover* was neatly cabined to the facts of that case and similar instances.  *Clover* does not stand for the proposition that every choice-of-law provision is automatically case-dispositive, as Pekin suggests.  A review of the Third Circuit's language in that case shows why that position overstates.

Again, the Third Circuit reversed a decision where the District Court had not considered the contract's references to Indiana's laws.  The court noted that such references "may provide *persuasive* evidence that the parties to the contract intended for that state's law to apply."[36]  Here, I readily acknowledge that the parties chose, at least implicitly, Indiana law.  But the Third Circuit was also very clear that courts may sometimes choose to "not enforce choice of law clauses," particularly in adhesion contracts, because of the disparity in the parties' bargaining power.  Instantly, Pekin's use of *Clover* as impenetrable armor becomes suspect.  The chinks in that armor become bigger shortly.

Now in *Clover*, the Circuit evaluated the contract at issue and determined that the concern with bargaining disparity did "not apply to group insurance contracts."[37]  But immediately, the court narrowed *Clover*'s holding again, qualifying its previous statement by saying that bargaining power concerns did not apply "in the circumstances here," leaving open the possibility that, even in group

---

[35]  Doc. 10 at 3.
[36]  *Clover*, 195 F.3d at 165 (3d Cir. 1999) (emphasis added).
[37]  *Id*.

insurance contracts, courts have discretion to invalidate choice-of-law provisions in appropriate circumstances.

Having evaluated the contract, the context, and the parties' ability to exert leverage at the negotiation table, the Third Circuit found that there should be "no barrier" to applying Indiana law *in that case*. Clearly, *Clover* did not purport to issue nearly as sweeping a ruling as Pekin would like. It does not appear to stand for the proposition that a lower court should ignore settled choice-of-law principles and automatically endorse every choice-of-law provision without thought. While Pekin points to three decisions issued by other District Courts within this Circuit supporting its view, none of those decisions are binding on this Court, and I find them to read into *Clover* an unnecessarily expansive holding.[38] I do not interpret *Clover* as necessarily deciding "that the conflicts analysis should end when the parties have chosen which state's law to apply."[39]

Instead, I am persuaded by the extensive body of case law that recognizes and upholds *Clover*'s acknowledgment that sometimes courts may disregard choice-of-law provisions in contract disputes.[40] These cases include disputes both

---

[38] Pekin oddly criticized Plaintiffs' counsel for relying on an "apparently unreported" decision from the Western District of Pennsylvania. Doc. 10 at 3. Putting that comment aside, Pekin then *immediately* relies on three unreported decisions itself to support its own argument.

[39] *Blizzard v. Fed. Ins. Co.*, 2007 WL 675346 at * 3 (E.D. Pa. Feb. 27, 2007).

[40] Pekin suggests that there is something particular about insurance contracts that somehow insulates them from choice-of-law principles, but never explains what this curious something might be. Without more, the Court will not credit this conclusory argument. *See* Doc. 10 at 3 (Plaintiff claims that the "choice-of-law principles recited in the Third Circuit decisions having nothing to do with insurance coverage which are cited [in] Plaintiff's Brief in Opposition" are apparently unhelpful to the disposition of this matter).

in and out of the insurance context.[41]  Therefore, the Court considers whether there

are good grounds to invalidate a provision two parties contracted for.  As noted

above, there are two reasons why a court might reject a choice-of-law provision.

The first is not at issue here.  Indiana had a substantial relationship to the contract

when it was entered into.  Therefore, I must ask whether: (1) applying that law

would contradict Pennsylvania public policy; (2) whether Pennsylvania has a

materially greater interest than Indiana in the determination of this issue; and (3)

whether Pennsylvania would be the state of the applicable law absent the parties'

selection of Indiana law.[42]

### 2.    Applying Indiana Law in This Case Would be Contrary to Pennsylvania Public Policy

There is "clear statutory language" in Pennsylvania indicating its "public

policy on the issue of excess versus gap coverage."[43]  This language comes from

the state's Motor Vehicle Financial Responsibility Law.  "Under the MVFRL,

insurers must offer underinsured motorist coverage, and that coverage is controlled

by statute and by a public policy meant to foster the fullest possible, or excess

coverage."[44]  Querying whether this policy is "fundamental," the Court recognizes

the Restatement (Second) of Conflicts of Laws, which states that statutes

---

[41] *See, e.g.*, *Delaware Valley Home Evaluations, Inc. v. Housemaster of America, Inc.*, 559 F.Supp.2d 291 (E.D. Pa. 2008).

[42] *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 621-22 (3d Cir. 2009) (citations omitted).

[43] *Allwein v. Donegal Mut. Ins. Co.*, 448 Pa. Super. 364, 383 (1996).

[44] *Id.* at 379 (citations omitted).

"involving the rights of an individual insured as against an insurance company are an example of this sort."[45]  It is clear that allowing an insurer to provide only gap insurance (as Indiana does), instead of excess coverage, would violate Pennsylvania public policy.[46]

Pekin focused only on what I will refer to as the "*Generali*" question in its brief in support of the motion to dismiss, and therefore did not address any of the issues that arise under the choice-of-law analysis in the event that this Court found that the choice-of-law provision did not necessarily need to be enforced.  Pekin tries to shoehorn a new argument in its reply,[47] but it is "of course, inappropriate to raise an argument for the first time in a reply brief."[48]  Because that argument was raised "for the first time in a reply brief," it is "forfeited."[49]

### 3.    Pennsylvania Has a Materially Greater Interest in the Outcome of This Action

Once again, the Court notes that Pekin did not move to dismiss on the grounds that Pennsylvania would not have a materially greater interest in the outcome of this action.  Reviewing the allegations, it seems Pennsylvania's interest in the resolution is materially greater than Indiana's.  Even out-of-state courts have recognized that Pennsylvania's interest in its UIM stacking law is "obviously

---

[45] *See Alcantarilla v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 8785007 at *13 (W.D. Pa. Dec. 15, 2015) (quoting Restatement (Second) of Conflicts of Laws § 187 cmt. g.).
[46] *See id.*
[47] Doc. 10 at 2-3.
[48] *Oberwager v. McKechnie Ltd.*, 351 Fed. Appx. 708, 711 n.5 (3d Cir. 2009).
[49] *Advanced Fluid Systems, Inc. v. Huber*, 958 F.3d 168, 180 n.12 (3d Cir. 2020).

predicated on its firm public policy of affording its residents the full advantage of all the insurance they have purchased."[50]

Additionally, the Third Circuit has previously found that, in cases sufficiently similar, Pennsylvania's interest in providing the "full benefit of insurance provisions" merits application of Pennsylvania law.[51]  As this accident took place on Pennsylvania roads and impacted Pennsylvania residents, it seems reasonable to conclude that Pennsylvania has a greater interest in the resolution of this dispute than does Indiana, the state in which the contract was ostensibly formed.[52]

### 4.      Pennsylvania Law Would Apply Absent a Choice-of-Law Provision

The final prong in the choice-of-law analysis requires the Court to consider whether, without a choice-of-law provision, Pennsylvania law would apply.  Doing so involves utilizing Pennsylvania's blended approach with the Restatement (Second) of Conflicts of Laws and an interests analysis.  "When the underlying issue involves a contract, such as an insurance policy, the court looks to the contacts each state has with the underlying transaction involving the policy, not to the contacts with the tort giving rise to the dispute."[53]  Additionally, the Court

---

[50] *New Jersey Mfrs. Ins. Co. v. MacVicar*, 307 N.J. Super. 507, 514 (1998).

[51] *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167 (3d Cir. 2011).

[52] *See id.*, 656 F.3d at 177-78 (3d Cir. 2011); *Alcantarilla v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 8785007 at *10 (W.D. Pa. Dec. 15, 2015).

[53] *Esurance Ins. Servs., Inc. v. Weber*, 30 F.Supp.3d 351 (E.D. Pa. 2014).

should consider certain government interests.[54]  The goal is to determine, in a

qualitative sense – as opposed to just counting contacts – which state has the most

significant relationship to the issue. Because the Court only has Plaintiffs'

argument on this issue (as Pekin never reached this stage of the argument in

briefing), the Court sees no reason to dismiss the claim on grounds Pekin did not

raise.  Furthermore, it is plausible, from the complaint, that Pennsylvania does

have a more significant relationship with the contract at this point.

"In determining which state has the most significant relationship, § 188 [of

the Restatement (Second)] instructs courts to evaluate each state's contacts,

according to their relative importance, such as the place of contracting and

performance, the location of the subject matter of the contract, and the domicile,

residence, nationality, place of incorporation and place of business of the

parties."[55]  While the contract was formed in Indiana, Plaintiffs reside in

Pennsylvania, and the subject matter of the contract was garaged in Pennsylvania

at the time of the accident.[56]

---

[54]  *See* Restatement (Second) of Conflicts of Laws § 6(2) (1971) ("(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied").

[55]  *Fogel*, 656 F.3d at 172 (3d Cir. 2011) (internal quotation marks omitted).

[56]  The Court notes that it is unclear whether Pekin was on notice that the insured risk (the car) had been moved to Pennsylvania on a permanent basis.  This fact may be of importance, and the parties would do well to establish this fact before any dispositive motions are filed at the close of discovery.  *See Alcantarilla*, 2015 WL 8785007 (W.D. Pa. Dec. 15, 2015); *Fogel*, 656

Of course, if over the span of discovery, evidence is discovered that would shift the contacts analysis, Pekin is welcome to raise the choice-of-law issue again at summary judgment. For now, however, Pekin has not met its burden to justify dismissal.

## III.    CONCLUSION

Having determined that Pennsylvania law applies, the Court denies the motion to dismiss. It bears repeating again that Pekin failed to brief the merits of the claims under Pennsylvania law, in the event that the Court ruled against their initial choice-of-law argument. Having chosen to not address the question of whether or not the complaint stated a claim under Pennsylvania law, Pekin is not entitled to dismissal. Because Pekin's motion to dismiss was exclusively premised on the success of its breach of contract argument, the claims for declaratory judgment and bad faith survive as well.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge

---

F.3d 167 (3d Cir. 2011). But again, because Pekin has not raised the issue, it would be inappropriate for the Court to dismiss the complaint.