IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| JOANN WATTS, *et al.*, | | No. 4:20-CV-01311 |
|---|---|---|
| Plaintiffs, | | (Chief Judge Brann) |
| v. | | |
| PEKIN INSURANCE, | | |
| Defendant. | | |

## MEMORANDUM OPINION

### DECEMBER 14, 2022

## I.     BACKGROUND

Joann Watts and Gordon L. Emick, Jr., (collectively "Plaintiffs") filed this complaint against Pekin Insurance ("Pekin") raising claims for declaratory judgment and alleging breach of contract and bad faith related to Pekin's denial of Plaintiffs' insurance claims.[1] Pekin thereafter filed a motion to dismiss the complaint on the ground that the Indiana law should apply to the insurance contract and, under Indiana law, denial of Plaintiffs' claims is proper.[2]

This Court denied the motion to dismiss.[3] The Court concluded that, although the insurance contract at least implicitly chose Indiana law as the law that applied to the contract, that fact alone did not end the analysis.[4] Rather, the Court found that a

---

[1]   Doc. 1.
[2]   Docs. 6, 7.
[3]   Docs. 11, 12.
[4]   Doc. 11 at 6.

choice-of-law provision should govern unless application of the chosen state's law would be contrary to a fundamental policy of Pennsylvania, Pennsylvania had a materially greater interest than Indiana in the determination of the underlying issue, and Pennsylvania would be the state of the applicable law absent the parties' selection of Indiana law.[5] The Court then denied the motion to dismiss after concluding, based on the parties' arguments, that: (1) applying Indiana law would be contrary to Pennsylvania public policy, (2) Pennsylvania had a materially greater interest in the outcome of the case, and (3) it was at least arguable that Pennsylvania law would apply absent the choice-of-law provision contained in the contract.[6]

Pekin has now filed a motion for summary judgment again raising the choice-of-law issue.[7] Pekin argues that applying Indiana law does not violate Pennsylvania public policy, as Pennsylvania law specifically exempts underinsured motorist coverage requirements for policies issued or delivered outside of the state.[8] Pekin further asserts that Pennsylvania does not have a materially greater interest than Indiana in the outcome of this case because the parties justifiably expected Indiana law to apply, and a significant number of actions relevant to the contract occurred in

---

5   *Id.* at 7-10.
6   *Id.* at 10-14.
7   Doc. 20. This Court based some of its determination at the motion to dismiss stage based on the absence of argument from Pekin regarding the choice-of-law factors, and the Court therefore gave leave for Pekin to reraise the choice-of-law issue at summary judgment. *See* Doc. 11 at 14.
8   Doc. 22 at 5-8.

Indiana.[9] Pekin also contends that Indiana law would apply even absent the Policy's choice of law, as all major considerations at the time that the contract was formed involved Indiana, not Pennsylvania.[10]

Pekin argues that, because Indiana law applies, under that law and the provisions of the insurance contract, coverage was properly denied and there was no breach of contract.[11] Finally, Pekin asserts that, because the breach of contract claims fail, so too do claims of bad faith and for declaratory judgment.[12]

Plaintiffs respond that applying Indiana law would be contrary to Pennsylvania's strong public policy in favor of requiring stacked, excess underinsured motorist insurance coverage.[13] Plaintiffs also argue that Pennsylvania has a materially greater interest in the outcome of this case as it has a vital interest in protecting its injured residents.[14] Plaintiffs assert that Pennsylvania law would apply absent the forum selection clause, as it has the greater interest in the application of its law, since this would determine coverage for two of its residents.[15] Finally, because Pennsylvania law applies, Plaintiffs argue that Pekin improperly

---

[9]   *Id.* at 8-10.
[10]   *Id.* at 10-11.
[11]   *Id.* at 11-12.
[12]   *Id.* at 12-13.
[13]   Doc. 25 at 15-21.
[14]   *Id.* at 21-22.
[15]   *Id.* at 22-25.

denied coverage, and judgment cannot be granted in its favor as to any of Plaintiffs' claims.[16]

Pekin has filed a reply brief, rendering this matter ripe for disposition.[17] For the following reasons, the motion will be granted.

## II.    DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[19] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor.[20] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[21]

### B.    Undisputed Facts

On April 14, 2017, JoAnn Watts ("Watts") and Christopher Watts obtained an automobile insurance policy (the "Policy") from Pekin; the Policy was effective

---

[16]   *Id.* at 25-29.
[17]   Doc. 26.
[18]   Fed. R. Civ. P. 56(a).
[19]   *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)).
[20]   Fed. R. Civ. P. 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.
[21]   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

through April 14, 2018.[22] The Policy provided liability and underinsured motorist coverage for two vehicles, including a 2015 Honda Civic ("Honda"), and provided a policy limit of $100,000 per person and $300,000 per accident.[23] The Policy was delivered in Indiana, the Declarations page of the Policy listed the Watts' address as a residence in Columbus, Indiana, and, at the time the Policy was executed, Watts resided in Indiana and the Honda was located in Indiana.[24]

> The Policy defined an underinsured motor vehicle as a vehicle
>
> for which the sum of the limits under all bodily injury liability bonds or policies applicable at the time of the accident is either: 1. Less than the limit of liability for this coverage; or 2. Reduced by payments to persons, other than 'insureds', injured in the accident to less than the limit of liability for this coverage.[25]

By September 20, 2017, Watts had moved to Pennsylvania and was residing in an apartment in the state. That said, she did not own real property in Pennsylvania, she was not registered to vote in Pennsylvania, her driver's license was issued in Indiana, and the Honda was still registered in Indiana.[26] Prior to her move to Pennsylvania, Watts informed an employee at Johnson-Witkemper, Inc., an agent of Pekin, that she was planning to move to Pennsylvania.[27] On September 20, 2017, Plaintiffs were involved in an automobile accident while driving the Honda in

---

[22] Doc. 21 ¶¶ 1, 9.
[23] *Id.*
[24] *Id.* ¶¶ 2-3, 8; Doc. 24 ¶ 3.
[25] Doc. 21 ¶ 7.
[26] *Id.* ¶¶ 16-20; Doc. 24 ¶ 16.
[27] Doc. 24 ¶ 13.

Williamsport, Pennsylvania, where they were rear-ended by another driver, Richard E. Piger, III, resulting in injuries to both Plaintiffs.[28]

Following the accident, Plaintiffs filed a civil suit in state court against Piger.[29] Piger's insurance policy provided coverage limits of $100,000 per person and $300,000 per accident.[30] Plaintiffs thereafter filed a claim for underinsured motorist benefits with Pekin, but the claim was denied because the coverage limits of Piger's insurance matched Plaintiffs' underinsured motorist coverage from Pekin and, under the Policy, Piger was not an underinsured motorist.[31]

### C.   Analysis

The parties agree that the entirety of this dispute boils down to which state law applies: under Indiana law, Pekin would have properly denied coverage whereas, under Pennsylvania law, denial of coverage would have been improper. This divergence stems from fundamental differences in the laws of both states regarding "gap" coverage and "excess" coverage. The Superior Court of Pennsylvania has explained the differences between these forms of coverage: "[u]nder excess coverage, the party at fault is underinsured when his liability limits are less than the insured victim's total damages" while, under gap coverage, "[t]he

---

[28] Doc. 21 ¶ 5; Doc. 24 ¶ 5.
[29] Doc. 1 ¶ 36.
[30] *Id.* ¶ 38.
[31] *Id.* ¶¶ 51-52, 56-58.

party at fault is underinsured when his or her liability limits are less than a specified policy limit of the insured victim."[32] The result is that:

> under a gap underinsurance policy, a tortfeasor's vehicle would not be an underinsured vehicle if the tortfeasor's liability limits were greater than or equal to the victim's underinsurance benefits, *regardless of the victim's losses and damages.* The result under gap insurance, therefore, is that the victim of a negligent driver whose liability insurance is not adequate to indemnify the victim for losses and damages would receive *no* underinsurance from his or her own policy if the tortfeasor's liability insurance were greater than or equal to the victim's underinsurance benefit.[33]

In Indiana, gap coverage is permissible if the insurance policy contains unambiguous language providing such coverage.[34] By contrast, Pennsylvania law generally requires that insurers provide excess underinsurance coverage rather than gap coverage.[35] Therefore, the Court must determine which state's law applies to the insurance contract at issue here.

Because this Court sits in diversity, it is obligated to apply "Pennsylvania's choice of law rules in resolving the parties' dispute over which law applied to the [P]olicy."[36] Under Pennsylvania law, "the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have

---

[32]  *Allwein v. Donegal Mut. Ins. Co.*, 671 A.2d 744, 747 (Pa. Super. Ct. 1996).
[33]  *Id.* at 748.
[34]  *Castillo v. Prudential Prop. & Cas. Ins. Co.*, 834 N.E.2d 204, 206-07 (Ind. Ct. App. 2005).
[35]  *Allwein*, 671 A.2d at 748.
[36]  *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999).

chosen the relevant law."[37] "Because this is a contract case, the law of the state specified in the contract will be applied unless," as relevant here,

> application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 [of the Restatement (Second) of Conflicts of Law], would be the state of the applicable law in the absence of an effective choice of law by the parties.[38]

Here, Plaintiffs concede, quite reasonably, that the Policy implicitly selected Indiana law as the law that governs the Policy.[39] Consequently, Indiana law applies to the Policy, unless (1) applying Indiana law would be contrary to a fundamental policy of Pennsylvania, (2) Pennsylvania has a materially greater interest than Indiana in the determination of the particular issue, and (3) Pennsylvania would be the state of the applicable law in the absence of the parties' selection of Indiana as the choice of law.

### 1.    Which Law Applies to the Policy

#### a.    Whether Applying Indiana Law Would be Contrary to a Fundamental Policy of Pennsylvania

As this Court noted in denying Pekin's motion to dismiss, "[t]here is 'clear statutory language' in Pennsylvania indicating its 'public policy on the issue of excess versus gap coverage'" based upon Pennsylvania's Motor Vehicle Financial

---

[37]   *Id.*
[38]   *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 621-22 (3d Cir. 2009).
[39]   Doc. 25 at 15.

Responsibility Law ("MVFRL").[40] That law requires that insurers "offer underinsured motorist coverage, and that coverage is controlled by statute and by a public policy meant to foster the fullest possible, or excess coverage."[41] This Court recognized that such public policy is fundamental, as it involved the rights of individuals as against insurance companies.[42] The Court therefore concluded that "[i]t is clear that allowing an insurer to provide only gap insurance (as Indiana does), instead of excess coverage, would violate Pennsylvania public policy."[43]

Pekin nevertheless argues that Pennsylvania does not have a public policy as applied to gap coverage for out-of-state insurance contracts. Pekin notes that the relevant portion of the MVFRL only requires that excess underinsured motorist coverage be offered where an insurance policy is "delivered or issued for delivery in" Pennsylvania,[44] and asserts that other requirements of the MVFRL apply to nonresidents and vehicles that are not registered in Pennsylvania.[45]

The Court concludes, again, that Pennsylvania has expressed a strong public policy for protecting its residents by requiring excess underinsured motorist coverage. As an initial matter, Pekin misreads the portion of the MVFRL upon which it relies. Pekin quotes the portion of the MVFRL that that sets forth the manner for

---

[40] Doc. 11 at 10 (quoting *Allwein*, 671 A.2d at 754).
[41] *Id.* (quoting *Allwein*, 671 A.2d at 752).
[42] *Id.* at 10-11.
[43] *Id.* at 11.
[44] Doc. 22 at 6 (quoting 75 Pa. Stat. and Cons. Stat. § 1731).
[45] *Id.* (citing 75 Pa. Stat. and Cons. Stat. § 1782(b)).

providing proof of financial responsibility, which applies to any "nonresident owner of a motor vehicle not registered in" Pennsylvania.[46] However, looking to the section of the law that addresses "required financial responsibility," it provides only that "[e]very motor vehicle of the type *required to be registered* under this title which is operated or currently registered shall be covered by financial responsibility."[47]

These laws appear at first blush to be in conflict; required financial responsibility applies only to vehicles that must be registered in Pennsylvania, while the MVFRL simultaneously provides a method for nonresident owners of vehicles *not registered* in Pennsylvania to provide proof of financial responsibility, even though such proof would not be required for that individual. However, these seemingly discordant provisions may be harmonized when one understands 71 Pa. C.S.A. § 1782(b) as applying when a "nonresident owner of a motor vehicle not registered in this Commonwealth" seeks to register a vehicle in Pennsylvania. Under such circumstances, that individual would need a method of proving financial responsibility despite not being a resident and not having a vehicle yet registered in Pennsylvania, as such proof is required before registration in Pennsylvania may be effectuated.[48]

---

[46]   75 Pa. Stat. and Cons. Stat. § 1782(b).

[47]   75 Pa. Stat. and Cons. Stat. § 1786(a) (emphasis added).

[48]   *See* 75 Pa. Stat. and Cons. Stat. Ann. § 1786(b) (mandating that the Pennsylvania Department of Transportation "shall refuse to register or renew the registration of a vehicle for failure to comply with this requirement or falsification of self-certification").

Consequently, the provision of the MVFRL to which Pekin cites does not seek to extend its provisions to nonresidents with no connection to Pennsylvania but, rather, applies its provisions only to those with a direct and tangible connection to the state. The Court therefore cannot read the language of § 1731, which mandates that insurers offer excess underinsured motorist coverage for insurance policies "delivered or issued for delivery in" Pennsylvania,[49] as a deliberate public policy choice on the part of the legislature to exclude such protections for any state residents who happened to execute an insurance contract in a different state prior to moving to Pennsylvania.

Furthermore, as discussed previously, there can be no doubt that the Pennsylvania legislature has expressed a broad "public policy meant to foster the fullest possible, or excess coverage" for its residents.[50] There is no indication in the MVFRL that the legislature desired to restrict that public policy in any meaningful way.[51] As one district court has stated, courts may not read underinsured motorist "coverage into a policy that was issued outside of Pennsylvania for a vehicle that was not registered or principally garaged in Pennsylvania when none exists under

---

[49]   Doc. 22 at 6 (quoting 75 Pa. Stat. and Cons. Stat. § 1731).
[50]   *Allwein*, 671 A.2d at 752.
[51]   It would be difficult, if not unworkable and unconstitutional, for the Pennsylvania General Assembly to mandate insurance provisions for policies that are issued outside of the state for vehicles not registered or principally garaged in Pennsylvania, and which may never enter the state. This makes it even more unlikely that the MVFRL's reference to policies delivered or issued for delivery in Pennsylvania was a deliberate policy choice to exclude those protections for any other policies. Furthermore, Pekin points to no portion of the MVFRL in which that law explicitly applies to policies delivered or issued outside of Pennsylvania, and the Court has located no such provision.

the terms of the policy. If the policy is not issued in Pennsylvania, then [underinsured motorist] coverage need not be offered under § 1731(a)."[52] However, "Pennsylvania law should [still] determine the scope of already-existing [underinsured motorist] coverage, when applying another state's law would conflict with Pennsylvania law on the issue."[53]

The Court agrees with that reading of the law, and again concludes that Pennsylvania has evidenced a strong public policy in favor of providing excess underinsured motorist coverage. Applying Indiana law that permits gap coverage would violate that public policy, and Plaintiffs have met the first requirement to apply Pennsylvania law.

> **b.   Whether Pennsylvania has a Materially Greater Interest Than Indiana in the Determination of the Particular Issue**

The Court must next determine whether Pennsylvania has a materially greater interest in the outcome of this matter than does Indiana. "In determining which state has the greater interest in the application of its law, one method is to see what contacts each state has with the accident, the contacts being relevant only if they relate to the 'policies and interest underlying the particular issue before the court.'"[54]

---

[52] *Alcantarilla v. State Farm Mut. Auto. Ins. Co.*, No. 2:15-CV-1155, 2015 WL 8785007, at *15 (W.D. Pa. Dec. 15, 2015).

[53] *Id.*

[54] *McDonald v. Whitewater Challengers, Inc.*, 116 A.3d 99, 109 (Pa. Super. Ct. 2015) (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)).

Although this presents a close question, the Court concludes that Pennsylvania has a materially greater interest in the outcome of this matter.

Plaintiffs were residents of Pennsylvania at time of the accident, Watts was employed in Pennsylvania, and Watts paid taxes in Pennsylvania.[55] Pennsylvania has a strong interest in protecting its residents—particularly as to an issue in which Pennsylvania has declared a strong public policy—and in applying its laws to its residents. While Indiana has a countervailing interest in ensuring that contracts delivered in its state are enforced according to its law, Pennsylvania's interest materially outweighs Indiana's interest when all relevant events involving the underlying accident and subsequent insurance claim occurred in Pennsylvania.[56] Plaintiffs have therefore demonstrated that the second requirement for applying Pennsylvania law has been met.

> **c.    Whether Pennsylvania Would be the State of Applicable Law Absent the Parties' Selection of Indiana as the Choice of Law**

Finally then, the Court turns to the question of whether Pennsylvania would be the state of the applicable law absent the parties' implicit selection of Indiana as the choice of law. In assessing this question, the Court must apply a "flexible

---

[55]   Doc. 24 ¶ 16.

[56]   *Cf. Homa v. Am. Express Co.*, 558 F.3d 225, 232-33 (3d Cir. 2009) (holding that New Jersey had a materially greater interest in the outcome of that matter because, although Utah was the place of contracting and place of performance, the account was located in Utah, and the defendant was a Utah corporation, the plaintiff was a New Jersey resident, was located in New Jersey during all dealings with the defendant, and had alleged violations of New Jersey law).

conflicts methodology approach to insurance contract cases" and "must apply the law of the state having the most significant contacts or relationships with the contract and not the underlying tort."[57]

In assessing which state's laws would apply, Pennsylvania choice of law provides that:

> In the absence of an effective choice of law by the parties . . . the contacts to be taken into account . . . to determine the law applicable to an issue include:
>
> (a) the place of contracting;
> (b) the place of negotiation of the contract;
> (c) the place of performance;
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.[58]

An analysis of those factors leads the Court to conclude that, absent the Policy's implicit selection of Indiana law as the choice of law, Indiana law would still govern the Policy. As to the place of contracting, it is undisputed that the Policy was delivered in Indiana, meaning that it likewise was executed in Indiana.[59] With regard to the place of negotiation, although Pekin is an Illinois corporation, Watts

---

[57] *Wilson v. Transp. Ins. Co.*, 889 A.2d 563, 571 (Pa. Super. Ct. 2005). *See also Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007) ("In *Griffith v. United Air Lines Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), the Pennsylvania Supreme Court expressly abandoned the 'lexi loci delicti' rule 'in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court'").

[58] *Pa. Dep't of Banking v. NCAS of Del., LLC*, 931 A.2d 771, 776 (Pa. Commw. Ct. 2007) (quoting Restatement (Second) of Conflict of Laws § 188(b) (1988)).

[59] *See Hammersmith*, 480 F.3d at 233 ("An insurance contract is made in the state where it is delivered").

was an Indiana resident and dealt with an agent of Pekin in Indiana, indicating that the contract was negotiated—to the extent there was any negotiation—in Indiana.

The third factor, the place of performance, is neutral. Although, at the time that the contract was executed, Watts resided in Indiana and the Honda was located in Indiana,[60] the place of performance is "the state in which insurance premiums are received."[61] There is no indication in the record where Pekin received Plaintiffs' insurance premiums.[62] Given that Pekin is an Illinois corporation, the Court presumes that it received premiums in Illinois, and this factor therefore favors the application of neither Indiana nor Pennsylvania law.

"The fourth factor, location of the subject matter of the contract, refers to the location of the insured risk."[63] Ordinarily, this factor should be afforded "greater weight" than other factors.[64] However,

> the "location of the insured risk" is of less importance in the context of an automobile liability insurance policy than it would be in the context of, for example, a policy of fire insurance for a building. The mobility of the insured risk makes it possible that an accident covered by the policies will occur in a state other than the state where the automobile is principally garaged.[65]

---

[60]   Doc. 21 ¶¶ 2-3.

[61]   *York Int'l Corp. v. Liberty Mut. Ins. Co.*, No. 1:10-CV-0692, 2015 WL 4162981, at *14 (M.D. Pa. July 9, 2015) (quoting *Air & Liquid Sys. Corp. v. Allianz Underwriters Ins. Co.*, Civ. No. 11-CV-247, 2013 WL 5436934, *48 (W.D. Pa. Sept. 27, 2013)).

[62]   The Policy does not direct that premiums be submitted to any particular location, and simply notes that coverage will continue if Pekin receives payment within a specified grace period at "the Home Office in Pekin, Illinois or by an authorized representative of the Company." Doc. 1-1 at 23-24.

[63]   *Hammersmith*, 480 F.3d at 234.

[64]   *Id.* at 233.

[65]   *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 176-77 (3d Cir. 2011) (brackets omitted).

This factor weighs slightly in favor of applying Indiana law. Again, at the time that the contract was executed, Watts resided in Indiana and the Honda was located in Indiana.[66] The Court is "interested in each states' contact *to the contract*" and must therefore generally analyze the circumstances as they existed at the time that the contract was executed.[67]

The Court's analysis of this factor would likely be different if Pekin had, in fact, been informed that Watts had moved to Pennsylvania. As the United States Court of Appeals for the Third Circuit has held, if the insurer "had *actual* knowledge that the principal location of the insured risk had already shifted from [Indiana] to Pennsylvania based on direct communication of that fact by the insureds," the location of the insured risk would likewise shift—notwithstanding where the contract was initially executed—and this factor would weigh in favor of applying Pennsylvania law.[68] Stated differently, "the justified expectations of the parties shift[] when [the insurer is] put on notice that the [insured has] permanently relocated to Pennsylvania."[69]

However, there is no evidence that Pekin actually knew that Watts had moved to Pennsylvania by the time of the accident. The only available evidence

---

[66]   Doc. 21 ¶¶ 2-3.

[67]   *Am. Guarantee & Liab. Ins. Co. v. L. Offs. of Richard C. Weisberg*, 524 F. Supp. 3d 430, 453 (E.D. Pa. 2021). *See also Gould Inc. v. Cont'l Cas. Co.*, 822 F. Supp. 1172, 1176 (E.D. Pa. 1993) (focusing on conditions as they existed at the time that "the parties entered into the contracts").

[68]   *Fogel*, 656 F.3d at 177.

[69]   *Id.* at 175.

demonstrates that Watts informed Pekin's agent that she "was moving to Pennsylvania" and had obtained housing there.[70] That language, unfortunately, is ambiguous and only indicates a future intent to move from Indiana to Pennsylvania. Moreover, that notice was delivered to Pekin's agent in late August or early September,[71] just three weeks prior to the accident. There is no indication that Watts informed Pekin or its agents that she had actually moved to Pennsylvania by the time of the accident, or that Pekin had any other notice that Watts had moved, such that Pekin should have understood, or was put on notice, that the location of risk had shifted to Pennsylvania by the date of the accident.[72]

With regard to the fifth factor, the domicile, residence, nationality, place of incorporation and place of business of the parties, Pekin is an Illinois corporation with its principal place of business in Illinois,[73] while Plaintiffs were, at the time that the contract was executed, domiciled in Indiana.[74] Although the parties were residents of different states at the time of contracting, "the fact that one of the parties is domiciled or does business in a particular state assumes greater importance when combined with other contacts, such as that this state is the place of contracting or of

---

[70]  Doc. 20-1 at 4.

[71]  *Id.*

[72]  *See Alcantarilla*, 2015 WL 8785007 at *14-15 (finding that location of risk had shifted to Pennsylvania at the time of the accident because the plaintiffs "made it known to State Farm, through its agent . . . that the principal location of the insured risk (their vehicle) had permanently moved from North Carolina to Pennsylvania before the accident," insurance bills were mailed to the plaintiffs in Pennsylvania, the plaintiffs paid their premium from Pennsylvania, and the plaintiffs' receipts were sent to Pennsylvania).

[73]  Doc. 1 ¶ 3.

[74]  Doc. 21 ¶ 3.

performance."[75] It is therefore "significant that"[76] Plaintiffs were domiciled in Indiana and that many of the contract relationships were with Indiana. This factor therefore likewise weighs in favor of applying Indiana law.[77]

This Court must weigh "the above contacts on a "qualitative scale,"[78] and "a raw count of contacts cannot decide the question."[79] Weighing those contacts, the Court concludes that Indiana "has a more significant relationship to the insurance contract than Pennsylvania."[80] "The only connection Pennsylvania has to this dispute is that the plaintiff[s] reside[], and [the] alleged tort occurred, in Pennsylvania,"[81] while the factors relevant to the contract occurred primarily in Indiana. Indiana law would therefore apply even in the absence of a choice of law provision in the Policy. Consequently, Plaintiffs have not established all three prongs required to disregard the Policy's implicit choice of Indiana law, and Indiana law applies to the Policy.

### 2.    Merits of Plaintiffs' Claims

Turning then to the merits of Plaintiffs' claims, the application of Indiana law requires that summary judgment be granted in Pekin's favor.

---

[75]    *Hammersmith*, 480 F.3d at 235.

[76]    *Id.*

[77]    If the Court were to evaluate the parties' domiciles at the time of the accident, Plaintiffs would be domiciled in Pennsylvania, and this factor would arguably weigh slightly in their favor. However, weighing the contacts under a qualitative scale, the relationship with the contract would still weigh in favor of applying Indiana law.

[78]    *Id.*

[79]    *Fogel*, 656 F.3d at 176.

[80]    *Hammersmith*, 480 F.3d at 235.

[81]    *Id.*

As to Plaintiffs' claims of breach of contract, "[i]t is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms[;] (2) a breach of the contract; and[] (3) resultant damages."[82] "In interpreting the relevant provisions of the insurance policies at issue . . . [this Court is] guided by the polestar principle that insurance policies are contracts between an insurer and a policyholder."[83] In interpreting insurance policies, courts must "effectuate the intent of the contracting parties as reflected by the written language of the insurance policies," which requires that, "[i]f policy terms are clear and unambiguous, [courts] give those terms their plain and ordinary meaning."[84]

In this matter, the Policy's terms are unambiguous: the Policy provides that an underinsured motor vehicle is any "motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is . . . [l]ess than the limit of liability for this coverage."[85] The Policy therefore unambiguously provides "gap" coverage, rather than "excess" coverage. Here, the tortfeasor, Piger's, insurance policy provided coverage limits of $100,000 per person and $300,000 per accident,[86] while the Policy

---

[82] *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

[83] *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020).

[84] *Id.*

[85] Doc. 1-1 at 29.

[86] *Id.* ¶ 38.

provided identical coverage limits for underinsured motorist coverage of $100,000 per person and $300,000 per accident.[87]

Because the liability limits of Piger's insurance was not less than the liability limits for Plaintiffs' underinsured motorist coverage, pursuant to the Policy, Piger was not an underinsured motorist. Pekin therefore properly denied coverage to Plaintiffs. Consequently, judgment must be entered in favor of Pekin as to Plaintiffs' claims for declaratory judgment and breach of contract.

Turning to Plaintiffs' claims of bad faith, "to prevail in a bad faith insurance claim . . . a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim."[88] Mere negligence or bad judgment is not sufficient to establish bad faith,[89] and any inquiry as to bad faith is "fact specific and depend[s] on the conduct of the insurer toward its insured."[90] In Pennsylvania, clear and convincing evidence "requires evidence clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy of the truth of the precise facts in issue."[91]

---

[87]   Doc. 21 ¶ 1.

[88]   *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017).

[89]   *Id.* at 373-74.

[90]   *Wenk v. State Farm Fire & Cas. Co.*, 228 A.3d 540, 547 (Pa. Super. Ct. 2020).

[91]   *Berg v. Nationwide Mut. Ins. Co., Inc.*, 189 A.3d 1030, 1037 (Pa. Super. Ct. 2018) (internal quotation marks omitted).

Pekin had a reasonable basis to deny Plaintiffs' underinsured motorist claims as, under the terms of the Policy, Piger was not an underinsured motorist, and Plaintiffs were not entitled to recover under the Policy. Because Pekin had a reasonable basis to deny Plaintiffs' claims, it is entitled to judgment in its favor as to the bad faith claims.

## III.   CONCLUSION

For the foregoing reasons, the Court will grant Pekin's motion for summary judgment.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge